**Jerry L. LEWIS, et al., Plaintiffs,**

v.

**VILLAGE OF MINERVA, et al., Defendants.**

**No. 5:94 CV 2508.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 26, 1996.

John Douglas Liber, Spangenberg, Shibley, Lancione & Liber, Cleveland, OH, Bruce B. Elfvin, Barbara Kaye Besser, Elfvin & Besser, Cleveland, OH, for Jerry L. Lewis, Lorraine Lewis.

Leo R. Ward, Michael J. Smakula, Ward & Associates, Cleveland, OH, for Minerva Village, Minerva Police Dept.

Orville L. Reed, III, Buckingham, Doolittle & Burroughs, Akron, OH, Martin R. Hulthen, William D. Dowling, Oldham & Dowling, Akron, OH, for GTE North, Inc.

Steven William Ritz, Todd M. Raskin, Kimberly A. Brennan, Mazanec, Raskin & Ryder, Solon, OH, Leo R. Ward, Michael J. Smakula, Ward & Associates, Cleveland, OH, for Richard L. Taff.

Leo R. Ward, Michael J. Smakula, Ward & Associates, Cleveland, OH, for David Harp.

## MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

### I. INTRODUCTION

The Court issued a memorandum opinion on July 12, 1996 (Docket No. 118) granting the plaintiffs' motion for summary judgment with respect to liability on its claim that several defendants, including the Village of Minerva, intercepted their telephone communications in violation of the federal wiretap statute, 18 U.S.C. § 2520 ("Section 2520").[1] The Court noted in its opinion that while it was well settled that municipalities were not liable for punitive damages for constitutional violations under 42 U.S.C. § 1983, there appeared to be little if any authority on the issue of whether municipalities could be liable for punitive damages for direct violations

1. Plaintiffs' motion was granted with respect to the Village; its administrator, David Harp; and its former police chief, Richard Taff. The motion was denied with respect to defendant GTE North, Inc., and GTE North's cross-motion for

of the wiretap statute. The Court ordered the plaintiffs and the Village to brief the issue of whether a municipality can be held liable for punitive damages under Section 2520. Upon consideration of the briefs, the relevant case law, and public policy concerns, the Court finds that punitive damages are not available from municipalities for violations of the federal wiretap statute.

### II. DISCUSSION

■ In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities could be directly liable for monetary, declaratory, and injunctive relief under 42 U.S.C. § 1983 ("Section 1983"). However, in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court made clear that such liability does not extend to liability for punitive damages. While the extent of municipal liability is not in doubt for Section 1983 actions, there is no such clarity on a municipality's liability for punitive damages when it is sued directly, as is the case in the instant action.

■ The federal anti-wiretap statute, 18 U.S.C. § 2510 *et seq.*, provides for civil damages against those who violate its provisions. Section 2520 provides in relevant part:

§ 2520. **Recovery of civil damages authorized**

(a) **In general.**— ... [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

(b) **Relief.**—In an action under this section, appropriate relief includes

\*　　\*　　\*　　\*　　\*　　\*

summary judgment was granted. The Court has since granted plaintiffs' motion for a declaration pursuant to Rule 54(b) that there is no just reason for delay with respect to the ruling in favor of GTE North.

(2) damages under subsection (c)[2] and punitive damages in appropriate cases;

. . .

18 U.S.C. § 2520. Neither party has cited a case addressing whether punitive damages can be imposed upon a municipality under Section 2520. The Court is not of the view that *City of Newport*'s prohibition of punitive damages against municipalities in Section 1983 actions is controlling on a Section 2520 case. However, the Court believes an analysis of the Supreme Court's rationale in *City of Newport* is relevant.

In *City of Newport*, the Supreme Court engaged in a discussion of historical and policy factors before holding that a municipality is immune from punitive damages for Section 1983 violations of its officials. It noted that when the Civil Rights Act was enacted in 1871, "the immunity of a municipal corporation from punitive damages at common law was not open to serious question." *City of Newport*, 453 U.S. at 259, 101 S.Ct. at 2756. Noting that the common-law tradition of immunity was best expressed in the language of the opinions themselves, the Court cited *McGary v. President & Council of the City of Lafayette*, 12 Rob. 668 (La.1846), a case in which the city officials were found to have acted maliciously in violating an injunction and ordering the demolition of the plaintiff's house. Reasoning that the sins of the city officials should not be visited upon the taxpayers, the Louisiana Supreme Court explained:

Those who violate the laws of their country, disregard the authority of the courts of justice, and wantonly inflict injuries, certainly become thereby obnoxious to vindictive damages. These, however, can never be allowed against the innocent. Those which the plaintiff has recovered in the present case . . ., being evidently vindictive, cannot, in our opinion, be sanctioned by this court, as they are to be borne by widows, orphans, aged men and women, and strangers, who, admitting that they must repair the injury inflicted by the Mayor on the plaintiff, cannot be bound

beyond that amount, which will be sufficient for her indemnification.

12 Rob. at 677 (quoted in *City of Newport*, 453 U.S. at 261, 101 S.Ct. at 2756). Given the strong common-law precedent against punitive damages for municipalities, the Supreme Court proceeded on "the familiar assumption that Congress would have specifically so provided had it wished to abolish the doctrine." *Id.* at 263, 101 S.Ct. at 2758 [quotation omitted]. Nothing in the language of the statute or the legislative history hinted that Congress so intended, according to the Court. *Id.* at 263–66, 101 S.Ct. at 2757–59.

Beyond the lack of evidence Congress intended to depart from the common-law tradition, strong public policy considerations mitigated against imposing punitive liability upon municipalities, according to the Supreme Court:

Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. Regarding retribution, it remains true that an award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. . . . Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive senti-

---

**2.** These damages are generally restricted to the greater of $100 a day for each day of violation or $10,000.

ments. A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity. itself.

*Id.* at 266–67, 101 S.Ct. at 2759–60 [emphasis in original] [citations omitted].

Thus the Supreme Court based its rationale in *City of Newport* on two factors: 1) the fact that Congress, in enacting Section 1983, did not upset common-law tradition against municipal liability for punitive damages; and 2) public policy concerns mitigated against burdening the taxpayers with the punishment more properly imposed directly on the public officials. Application of those two factors to the instant case compels this Court to conclude that municipal liability for punitive damages is no more appropriate in the context of the wiretap statute than it is in the context of Section 1983.

Plaintiffs argue that Congress, in enacting the wiretap statute, could have carved out an express exception for municipalities, as it did in the Civil Rights Act of 1991,[3] but that it did not do so. They argue that reading an exemption for municipalities into the statute would be tantamount to amending the law. However, as the Supreme Court demonstrated in *City of Newport, supra,* the lack of an express exemption is not dispositive.[4] Moreover, as with the legislative history of Section 1983, the legislative history of the wiretap statute indicates no desire to impose liability upon municipalities for punitive damages.[5] Thus the failure of a statutory exemption for punitive damages for municipalities is not overly persuasive.

Plaintiffs' efforts in arguing that the Supreme Court's rationale under Section 1983 should not apply to Section 2520 are no more persuasive. They fail to explain how the historical tradition against imposing punitive liability upon municipalities has changed; in fact, they cite not a single case subjecting a municipality to punitive damages.[6]

Additionally, plaintiffs argue that allowing punitive damages would compel municipalities to ensure that their employees do not

---

3. In enacting the Civil Rights Act of 1991, Congress for the first time provided for money damages in Title VII cases. The 1991 act includes the following language: "A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1) (emphasis added).

4. Section 1983 contains no express exemption for municipal liability for punitive damages.

5. The wiretap statute originally passed as Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Plaintiffs point out that the legislative history indicates Congress, when amending the wiretap statute in 1986, considered but ultimately rejected a proposal to delete the *punitive damages provision in the statute.* Plaintiffs argue that Congress' failure to specifically exempt municipalities from the punitive damages provision is dispositive. The Court disagrees. Plaintiffs point to nothing in the legislative history indicating Congress even pondered the question of municipal liability, and the Court is of the view that "Congress would have specifically so provided had it wished to abolish the [immunity] doctrine." *City of Newport,* 453 U.S. at 263, 101 S.Ct. at 2758 [quotation omitted].

The fact that Congress, five years later, specifically exempted municipalities from punitive liability in another statute is not sufficient to support a conclusion that Congress chose to hold municipalities so liable under the wiretap statute.

6. Plaintiffs cite the following quotation from *City of Newport,* 453 U.S. at 267–68, 101 S.Ct. at 2760: "The Court previously has indicated that punitive damages might be awarded in appropriate circumstances in order to punish violations of constitutional rights, *Carey v. Piphus,* 435 U.S. 247, 257, n. 11, 98 S.Ct. 1042, 1049, n. 11, 55 L.Ed.2d 252 (1978), ...'" However, neither the cited *Carey* footnote nor the cases listed therein involved the issue at hand, i.e., whether municipalities should be liable punitive damages.

Moreover, a footnote in *City of Newport* hinted at the level of egregiousness necessary to hold a municipality liable for punitive damages: "It is perhaps possible to imagine an extreme situation where the taxpayers are *directly responsible for perpetrating an outrageous abuse of constitutional rights.* Nothing of that kind is presented by this case." *City of Newport,* 453 U.S. at 267 n. 29, 101 S.Ct. at 2760 n. 29 (emphasis added). The Supreme Court, albeit in a Section 1983 context, implies that it would take direct acts of wantonness by the taxpayers to support a claim for punitive damages against a municipality. Plaintiffs have not explained why such rationale is not equally applicable to a violation of Section 2520.

engage in unlawful wiretapping. However, municipalities act only through their officials. It seems unlikely that those officials, whose illegal acts put themselves at personal risk for punitive damages when sued in their individual capacities, will act any more carefully with the knowledge that they are also putting the taxpayers at risk. *See City of Newport*, 453 U.S. at 268, 101 S.Ct. at 2760 ("[I]t is far from clear that municipal officials, including those at the policymaking level, would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality.") A "more effective means of deterrence" is imposing punitive damages on "the offending official, based on his personal financial resources." *Id.* at 269, 101 S.Ct. at 2761.

Neither the plaintiffs nor the Village have cited a case directly on point. The Court has discovered an unpublished opinion, *Abbott et al. v. Village of Winthrop Harbor et al.,* 1995 WL 51553 (N.D.Ill.1995), in which the plaintiffs sued a municipality and its officials for violations of Section 2520. The district court dismissed the punitive damages claims against the village based upon the following rationale:

> First, both Section 1983 and the Federal Wiretap Act were enacted with primary purposes of compensation for the wronged individual and deterrence of public servants from abusing their positions. [citations omitted]. Second, these plaintiffs may recover statutory or actual damages from either the Village or [the police chief] or both. Third, it serves no useful function to force municipal taxpayers to shoulder the punitive burden of one of their official's alleged wrongdoing where there are no allegations that the taxpayers knew about or endorsed the official's behavior.

*Id.* at \*11. Thus the only case directly on point supports the proposition that it is inappropriate to impose punitive damages liability upon a municipality for a violation of the federal wiretap statute.[7]

### III. CONCLUSION

The long history of exempting municipalities from punitive damages, the lack of an affirmative act by Congress in imposing such liability upon municipalities, and strong public policy considerations convince the Court that it is inappropriate to consider a punitive damages claim against the Village of Minerva.

In holding that punitive damages claims shall not go forward against the village, the Court does not hold or imply that such claims shall go forward against the other defendants. The Court reserves its ruling with respect to other defendants until a time closer to trial.

IT IS SO ORDERED.

---

7. *See also Genty v. Resolution Trust Corp.,* 937 F.2d 899 (3d Cir.1991), in which the Third Circuit held that a municipality could not be held liable for damages, including mandatory punitive and treble damages, under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* In reasoning that a municipality could not form the requisite *mens rea* under the Act, the court relied extensively upon the long tradition of exempting municipalities from punitive liability: "For well over a century, most jurisdictions have recognized the principle that municipalities ... are exempt from punitive damages, unless a statute expressly provides such damage awards against municipalities." *Id.* at 910 (citing, *inter alia, City of Newport,* 453 U.S. at 260, 101 S.Ct. at 2756). The case illustrates how courts borrow from the rationale enunciated in *City of Newport* in determining whether municipalities are liable for punitive damages under statutes other than Section 1983.