Craig BLAKE; Jill Blake; Dan Anders; Brad Borowy; Brian Dalton; Melissa Dalton; John Ducas; Lynda Ducas; Brian Kavaras; David Kata; Constance Kata; John Novak; Stacey Novak, Plaintiffs–Appellees,

v.

Fred WRIGHT, Defendant–Appellant.

No. 97–3907.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1998.

Decided June 15, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 19, 1999.

Paul W. Flowers (argued), Cleveland, OH, W. Craig Bashein (briefed), Bashein & Bashein Co., L.P.A., Cleveland, OH, for Plaintiffs–Appellees.

Kurt D. Weaver (briefed), Colleen G. Treml (briefed), Stephen M. O'Bryan (argued and briefed), Kelley, McCann & Livingstone, Cleveland, OH, for Defendant–Appellant.

Before: KENNEDY and RYAN, Circuit Judges; HACKETT, District Judge.*

## OPINION

KENNEDY, Circuit Judge.

Defendant Fred Wright appeals the district court's denial of his motion to dismiss based on qualified immunity in this action alleging Wright recorded Plaintiffs' private telephone conversations and monitored them without their consent or knowledge in violation of their constitutional right to privacy in wire communications under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, the Federal Electronic Communications Privacy Act, otherwise commonly known as Title III of the Omnibus Crime Control Act under 18 U.S.C. §§ 2510–2522 ("Title III"),[1] and the Ohio wiretap statute, Ohio Rev.Code Ann.

---

* The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Congress revised Title III of the Omnibus Crime Control and Safe Streets Act, which now is known as the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510–2521. Title I amended Title III and now governs the use of wiretapping. For the purposes of this

§ 2933.52(A). Wright responded to the charges filed against him in his individual capacity by claiming qualified immunity to the federal charges and filed a Motion to Dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 16, 1997, the district court denied Wright qualified immunity. For the reasons that follow, we now REVERSE in part and AFFIRM in part.

## I.

The Ohio wiretap statute allows interception of telephone communications into and out of a police department if the telephone lines are limited to use for administrative purposes and at least one other unrecorded telephone line is available for private conversations.[2] On June 11, 1996, the City of Independence, Ohio, by way of a written Resolution passed in a public session, purchased a DigiVoice, Inc. Digital Recording system to use in the city's police and fire departments. On July 23, 1996, at the direction of ex-Chief of Police Wright, the system was installed to record all incoming and outgoing telephone calls at the Independence Police Department. In accordance with the Ohio wiretap statute, a pay phone in the police department and ex-Chief Wright's phone were excluded from the monitoring device. Plaintiffs allege that prior to the new DigiVoice sys-

tem, the police department had monitored only "emergency lines" and ex-Chief Wright had approved and followed a departmental policy that permitted the officers to use the non-emergency lines for personal calls. The system, as installed, did not contain an audible or regular tone to alert callers that their conversations were being recorded.

On August 2, 1996, Plaintiff Blake allegedly overheard Wright playing a recording in his office of a personal telephone call Blake had conducted on a non-emergency line. Subsequently, on August 7, 1996, the Department issued an e-mail memorandum that notified employees that all personal telephone calls on non-emergency lines would be monitored and recorded. On August 8, 1996, upon recommendation of the Cuyahoga County prosecutors, the system was disconnected from the non-emergency lines.

On October 28, 1996, Plaintiffs filed this action against Wright and the City of Independence. Wright responded in his individual capacity by asserting qualified immunity, claiming that it was reasonable for him to conclude that the Ohio wiretap statute authorized the installation of the recording system within the meaning of the "statutory authorization" exception of Title III.[3] Consequently, Wright claimed it was

---

case, we refer to the Act as Title III for the sake of convenience.

**2.** The Ohio statute prohibits any person from intercepting or using a wire, oral, or electronic communication, but it excludes police departments under certain circumstances, as stated in relevant part:

(B) This section does not apply to any of the following:

\* \* \*

(8) A police, fire, or emergency communications system to intercept wire communications coming into and going out of the communications system of a police department, fire department, or emergency center, if both of the following apply:

(a) The telephone, instrument, equipment, or facility is limited to the exclusive use of the communication system for administrative purposes;

(b) At least one telephone, instrument, equipment, or facility that is not subject to

interception is made available for public use at each police department, fire department, or emergency center.

Ohio Rev.Code Ann. § 2933.52 (West 1999).

**3.** 18 U.S.C. § 2520(d)(1) states that an individual who relies in good faith on "a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization" has a "complete defense against any civil or criminal action" brought under Title III. Further, we note that the installation of the recording system may fall within the law enforcement exception under Title III, although Wright does not make this argument on appeal. The exception, 18 U.S.C. § 2510(5)(a)(ii), precludes from its definition of "electronic, mechanical or other device ... any telephone or telegraph instrument, equipment, or facility, or any component thereof, ... being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative

not clearly established that installing a recording system on the police department's phone lines and tapping those phone lines violated either the Fourth Amendment or Title III and he was thus entitled to qualified immunity under both counts. We address his arguments in turn.

## II.

■ Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court crafted the qualified immunity defense "to protect [public officials] 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway,* 510 U.S. 510, 514, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994) (quoting *Harlow,* 457 U.S. at 806, 102 S.Ct. at 2732). Under this judicially created exception, government officials are immune from civil liability when acting in their official capacities if their actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727; *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ("Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken.").

■ We review a district court's denial of qualified immunity de novo. *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir. 1996); *Thomas v. Whalen,* 51 F.3d 1285, 1289 (6th Cir.1995). The defendant bears the burden of pleading the defense, but the plaintiff must show that the defendant is not entitled to qualified immunity. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). Supreme Court precedent dic-

tates that courts must resolve immunity questions at the earliest possible stage of litigation because qualified immunity is an immunity from suit rather than an affirmative defense, *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991), and thus a party may immediately appeal a district court's denial of qualified immunity. *See Behrens v. Pelletier,* 516 U.S. 299, 307, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996) ("[A]n order rejecting the defense of qualified immunity at either the dismissal state or the summary judgment stage is a 'final judgment' subject to immediate appeal."); *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995); *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

■ In order to determine whether qualified immunity applies, a twofold inquiry is necessary. *Greene,* 80 F.3d at 1104. First, the court must examine whether the alleged constitutional or statutory violations were "clearly established" at the time of the alleged violations. "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994), or case law from other circuits which is directly on point." *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir.1997) (citing *Cameron v. Seitz,* 38 F.3d 264, 272–73 (6th Cir.1994)). Although the absence of a case on point does not necessarily endow a public official with public immunity, "when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'" *Summar v. Bennett,* 157 F.3d 1054, 1058 (6th Cir.1998). Further, "[t]he contours of the right [must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted). Although the very action in question need not previously have been held unlawful, "in

or law enforcement officer in the ordinary course of his duties."

light of the pre-existing law the unlawfulness must be apparent." *Id.*

 Once it is determined that the right is clearly established, the court then must decide whether a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights.[4] *Greene,* 80 F.3d at 1104. Such a test reflects an objective standard, making the official's subjective intent irrelevant. *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998). Further, a defendant appealing the denial of qualified immunity must accept the facts alleged by the plaintiff for purposes of the appeal. *See Berryman v. Rieger,* 150 F.3d 561, 563 (6th Cir.1998). Because we review interlocutory appeals concerning qualified immunity on purely legal grounds and leave all factual issues for trial, *Johnson,* 515 U.S. at 313–18, 115 S.Ct. at 2156–58, a ruling in the defendant's favor is inappropriate if a genuine issue of material fact exists as to whether the defendant committed acts that allegedly violated clearly established rights. *Buckner v. Kilgore,* 36 F.3d 536, 540 (6th Cir.1994). Against this backdrop, we turn to the instant case.

### A.

We first examine whether Wright is entitled to qualified immunity under the

Fourth Amendment[5] because the law was "clearly established" that Plaintiffs had a reasonable expectation of privacy in their phone calls at the time of the alleged recordings in 1996. The district court found that "at the time Wright took his actions, a clearly established legal rule existed that he could not intercept private telephone communications without first obtaining a warrant, absent some exception to the warrant requirement." Although we acknowledge that the Fourth Amendment warns of inherent dangers with wiretapping, we agree with Wright that the case law, when examined with the relevant Ohio statute, was sufficiently uncertain regarding the unlawfulness of implementing the DigiVoice system in a police department's official phones in Ohio.

 Federal case law has specifically delineated a fundamental right to privacy in wire communications based on the Fourth Amendment. *See Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (eavesdropping devices without a warrant may violate the Fourth Amendment when the speaker has a reasonable expectation of privacy). In *Katz,* the Court reaffirmed *Berger* and held that the government cannot record private conversations without a valid warrant or prop-

---

4. The second part of the analysis flows from the first and thus an appellant faces a more difficult challenge to show the reasonableness of his or her conduct when the law is clearly established. This conclusion flows from the Supreme Court's statements in *Harlow:*

> If the law was clearly established, the immunity defense normally should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew or should have known of the relevant legal standard, the defense should be sustained.

*Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738.

5. Plaintiffs alleged a violation of 42 U.S.C. § 1983, which reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage,

of any State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

Plaintiffs bring their § 1983 claim under the Fourth Amendment, which provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

er authorization when the speaker has a reasonable expectation of privacy. 389 U.S. at 351–52, 88 S.Ct. 507. Based on the pleadings, Plaintiffs have made an initial showing and created an issue of fact as to whether they had a reasonable expectation of privacy in their personal phone calls because of the city's policy that they could use the police department non-emergency phones for personal calls. Even though the city had announced the plan to install the recording device, whether Plaintiffs knew or should have known of the new system remains a question for the finder of fact. Thus, under *Katz* and its progeny, Plaintiffs have alleged a reasonable expectation of privacy in their personal phone calls.

Wright makes two arguments to overcome *Katz* and show that he did not violate any clearly established rule. First, he contends that although the case law broadly establishes that government use of electronic surveillance on suspects implicates the Fourth Amendment, it does not imply that the installation and use of the recording system on the phones in a workplace setting such as a police department necessarily constitutes a Fourth Amendment violation. Thus, he argues Plaintiffs did not have a reasonable expectation of privacy in their phone calls, or at least it was not clearly established that they did.

Stated broadly, workplaces or commercial settings often are subject to less protection than dwellings. *See O'Connor v. Ortega*, 480 U.S. 709, 718, 107 S.Ct. 1492, 1501, 94 L.Ed.2d 714 (1987). In *O'Connor*, the Supreme Court stated that "operational realities of the workplace, however, may make some employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement agent." 480 U.S. at 717, 107 S.Ct. 1492. The plurality decision determined that although employees have an expectation of privacy in their workplace, that expectation is not without limits and that "[g]iven the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id.* at 718, 107 S.Ct. 1492. Although *O'Connor* speaks to workplace settings and may have relevance here, the Court specifically addressed employees' expectation of privacy in their offices, desks, and file cabinets in their workplaces.[6] Nothing in the case addressed wire recordings.

Wright also refers to two factually similar Illinois cases to dispel Plaintiffs' expectation of privacy. In *Jandak v. Village of Brookfield*, 520 F.Supp. 815 (N.D.Ill.1981), the district court found that a police officer and his companion who talked to one another on a tapped police department phone line could not prevail under Title III because the wiretapping was in the course of the police chief's duties and the police officer "should have known that calls on the line he used were being monitored." *Id.* at 824–25. *Jandak*, however, concerned a specific statutory exception under Title III and only obliquely discussed the parties' expectation of privacy. In *Abbott v. Winthrop Harbor Village,* 953 F.Supp. 931 (N.D.Ill.1996), a police chief charged with surreptitiously monitoring employees' phone conversations was found to have violated clearly established federal and

---

**6.** A plurality of the Justices determined that "[b]alanced against the substantial government interests in the efficient and proper operation of the workplace are the privacy interests of government employees in their place of work which, while not insubstantial, are far less than those found at home or in some other contexts." *O'Connor*, 480 U.S. at 725, 107 S.Ct. 1492. Thus, the Court imposed a "standard of reasonableness under all the circumstances" on employers who search employee workplaces. *Id.* at 725–26, 107 S.Ct.

1492. Justice Scalia, concurring, limited his holding to "special needs" evident in government employment permitting the government to "retrieve work-related materials or to investigate violations of workplace rules ... [and] do not violate the Fourth Amendment." *Id.* at 732, 107 S.Ct. 1492. The four dissenting Justices refuted the "special need" in the case to search the defendant's office and held that the typical Fourth Amendment analysis should apply to the case. *Id.* at 743, 107 S.Ct. 1492.

statutory law. *Id.* at 937–941. The police chief in *Winthrop* had distributed a written statement to the police officers that confirmed their calls would not be recorded, but such a distinction proves unconvincing here, particularly when Plaintiffs' have alleged that Wright at least verbally assured them that their personal calls would not be monitored and, at this stage of the litigation, we must accept Plaintiffs' allegations to be true.[7] Neither case answers the question presented here.

■ However, Wright posits a second basis for qualified immunity in view of the provision of the Ohio wiretap statute, Ohio Rev.Code Ann. § 2933.52(B)(8), that allows interception of telephone communications into and out of a police department so long as the telephone line is limited to use for administrative purposes and at least one other telephone line is available for private conversations. Wright contends that a reasonable officer acting in good faith could have perceived that he or she could implement the DigiVoice system within the confines of this statutory exception since the phone system was for the administrative use of the police department. As a result, he claims that it was not clearly established that his actions were illegal.

We agree with Wright's argument. At the time that the city purchased the DigiVoice system, no state or federal case law existed to guide city officials specifically as to the Ohio statute's constitutionality. In order to refute Wright's contention, Plaintiffs point to *Lewis v. Village of Minerva,* 934 F.Supp. 268 (N.D.Ohio 1996), in which a United States district court in Ohio held that a police chief who tapped city hall telephones in order to intercept the conversations of a police sergeant violated Title III and was not entitled to qualified immunity under § 1983. The wiretaps in *Lewis,* however, did not involve the recording of calls on lines to and from the police department and were not for its adminis-

trative use. They were instead telephone lines that a police employee used to call other city offices. Further, even assuming that *Lewis* provided some guidance as to whether the law was "clearly established," the *Lewis* court released its unpublished decision only eleven days prior to the installation of the recording system, long after the city already had announced in a public meeting that it would implement the DigiVoice system and had spent approximately $42,000 to purchase the system. Plaintiffs have not cited and the court has not uncovered a case that, at the time of these allegations, interpreted the Ohio statute with respect to a police department's recording of its phones. Considering the dearth of case law with respect to this provision of the Ohio wiretap statute, we cannot say that the case law in this circuit clearly established that Wright's actions violated the law.

Finally, Plaintiffs contend that once Wright assured the officers that they could use the phones for personal calls, an informal policy existed guaranteeing their privacy when using the phones and Wright could not record phone conversations on those lines even for administrative purposes without notifying Plaintiffs. However, simply because Wright allowed Plaintiffs to use the phone lines for personal calls does not change the fact that the phone lines were "administrative" in nature. The phones were intended and used for the purpose of carrying out the business of the police department. Their occasional use for personal calls does not change their nature. Moreover, the Ohio courts have not interpreted the term "administrative" under the Ohio wiretap statute and we do not find it necessary to do so for the purposes of this appeal. In sum, we hold that Wright is entitled to qualified immunity under § 1983 because the law regarding the administrative monitoring of police phone lines was sufficiently

---

7. Wright also relies on *Uniformed Division Officers Assoc. Local 17 v. Brady,* No. Civ. 88-3377, 1988 WL 142378 (D.D.C. Dec.23, 1988), for the proposition that police officers have diminished expectations of privacy. *Brady* concerned urinalysis testing, not wiretapping, and the court allowed such a test due to the safety and security of the public.

unclear at the time of the alleged violations that a "reasonable" officer in Wright's position would not have known he was violating clearly established law.[8]

### B.

■ Next we must determine whether Wright may claim qualified immunity with respect to Plaintiffs' claim that he violated Title III, 18 U.S.C. § 2511(1)(a)-(d), which makes it unlawful for any person to intentionally intercept, use, or disclose· any electronic, mechanical, or other device to intercept any oral, wire, or electronic communication. The purpose of Title III was to prohibit all electronic surveillance and interceptions of oral and wire communications, except those specifically provided for in the Act. See *Fultz v. Gilliam,* 942 F.2d 396, 399 (6th Cir.1991). Title III, however, provides a good faith exception to a civil or criminal action brought under the statute if the defendant relies in good faith upon "a statutory authorization" that allows him to implement an interception. *See* 18 U.S.C. § 2520(d)(1).

Wright argues that he may assert qualified immunity under Title III because he relied on the Ohio wiretap statute's administrative exception, which, in turn, Wright claims is a "statutory authorization" within the meaning of Title III. We agree. Although the Supreme Court has not specifically held that qualified immunity may apply to Title III, the Court implied such a result in *Harlow* by explicitly granting public officials qualified immunity when their actions do not violate "clearly established *statutory* or constitutional rights."

*Harlow,* 457 U.S. at 818, 102 S.Ct. 2727 (emphasis added). Moreover, although few courts have squarely addressed this issue, some circuit courts have applied qualified immunity to a Title III claim or at least implied that they would do so. *See In re State Police Litigation,* 88 F.3d 111, 125–27 (2d Cir.1996) (implying qualified immunity would apply to both constitutional and Title III claims); *Davis v. Zirkelbach,* 149 F.3d 614, 619–20 (7th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 902, 142 L.Ed.2d 901 (1999); *see also Gorman v. Bartch,* 152 F.3d 907, 914–15 (8th Cir. 1998) (applying qualified immunity to a claim under the ADA). This court similarly has implied that defendants may assert qualified immunity to both Title III and constitutional claims, specifically a Fourth Amendment violation, although the court did so with no discussion of the issue. *See Sinclair v. Schriber,* 916 F.2d 1109, 1111 (6th Cir.1990).

In contrast, at least one circuit court has held that qualified immunity does not apply to Title III because the federal statute contains a good faith defense that applies equally to all citizens, although it is narrower in scope than qualified immunity. *See Berry v. Funk,* 146 F.3d 1003 (D.C.Cir.1998); *see also Davis v. Gracey,* 111 F.3d 1472, 1481–84 (10th Cir.1997) (implying that the good faith defense under the Electronic Communications Privacy Act, formerly Title III, and qualified immunity are separate defenses); *Newcomb v. Ingle,* 944 F.2d 1534, 1536 (10th Cir. 1991) (implying that Title III is a separate and distinct claim from § 1983 qualified

---

**8.** In their Complaint, Plaintiffs cite the Fourth and Fourteenth amendments to the United States Constitution as a basis for their claim under § 1983. Wright moved for judgment on the basis of the Fourth Amendment and the district court did not address the Fourteenth Amendment claim in its decision. In his reply brief to this court, Wright claims that "[b]ecause there is a Fourth Amendment right to privacy and because Appellees list the Fourth Amendment before the Fourteenth Amendment, it appeared that Appellees were merely making a Fourth Amendment claim and listing the Fourteenth Amendment be-

cause that amendment makes the Fourth Amendment applicable to State and local entities." However, Plaintiffs claim a Fourteenth Amendment violation in their briefs to both the district court and this court. In their briefs, Plaintiffs seemingly assert that Wright violated their fundamental right to marital privacy. However, because we find that the law regarding the administrative provision of the Ohio wiretap statute is not clearly established, we find that Wright is entitled to qualified immunity under both the Fourth and Fourteenth Amendments.

immunity); *but cf. Kilgore v. Mitchell,* 623 F.2d 631, 633–34 (9th Cir.1980) (holding that if a defendant meets the statutory good faith defense under Title III, then the defendant also sufficiently meets the standard for qualified immunity as a defense to Fourth Amendment violations); *Jacobson v. Rose,* 592 F.2d 515, 522–25 (9th Cir.1978) (same).

Contrary to the conclusion of the *Berry* court, however, we find that simply because Title III provides a defense to wiretap violations does not necessarily imply that qualified immunity, a judicially created exception to liability, does not apply to this federal statutory violation. The courts crafted qualified immunity to protect public officials from civil liability when they perform discretionary activities in their official capacity. Nothing in Title III itself or elsewhere indicates that public officials cannot claim qualified immunity in response to an alleged Title III violation. The *Berry* court correctly pointed out that the good faith defense applies equally to all citizens who, in good faith, rely to their detriment on a court order or statutory authorization. *See id.* at 1013. But the court went further in stating that Congress intended that public officials receive the same defense as all other citizens. Such a holding runs counter to established qualified immunity precedent, for courts, by adopting qualified immunity as a defense for public officials only, have signaled that public officials indeed receive additional protection in responding to constitutional and statutory claims when ordinary citizens do not. In recognizing defenses of absolute and qualified immunity, the Supreme Court noted that such defenses existed at common law for judges, prosecutors and other public officials and concluded that in enacting § 1983, Congress did not, by its silence, intend to remove those defenses. *See Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). We would not strip a judge or prosecutor of absolute immunity because the claim related to a statutory violation and the statute provided an affirmative defense. By the same token, police officers and public officials performing governmental functions should not lose their qualified immunity because of an affirmative defense which might or might not protect them but would, in all events, require they be subject to extended litigation and deprive them of the benefits of qualified immunity. Thus, we conclude that Congress did not intend to deprive public officials of their defense of qualified immunity when it enacted Title III.

Further, although we acknowledge that some Supreme Court precedent may indicate that qualified immunity may be unavailable to public officials under Title III, we find the Court's dicta less than clear. In *Mitchell,* the Supreme Court discussed the Attorney General's claims of absolute and qualified immunity with respect to the warrantless wiretapping of the telephone of a member of an antiwar group. After concluding that the Attorney General was not entitled to absolute immunity for "actions undertaken in the interest of national security," the Supreme Court reversed the district court's denial of qualified immunity. *Mitchell,* 472 U.S. at 536, 105 S.Ct. 2806. In a footnote, the Court stated:

> The district court held a hearing on the purpose of the wiretap and took Mitchell at his word that the wiretap was a national security interception, not a prosecutorial function for which absolute immunity was recognized. The Court then concluded that the tap violated the Fourth Amendment and that Mitchell was not immune from liability for this violation under the *Harlow* standard. Had the court not concluded that the wiretap was indeed a national security wiretap, the qualified immunity question would never have been reached, for the tap would clearly have been illegal under Title III, and qualified immunity hence unavailable.

*Mitchell,* 472 U.S. at 535 n. 13, 105 S.Ct. 2806. In dissent, Justice Brennan interpreted this language of the opinion to imply that "the trial court should have decid-

ed the legality of the wiretap under Title III before going on to the qualified immunity question, since that question arises only when considering the legality of the wiretap under the Constitution." *Id.* at 558, 105 S.Ct. 2806 (Brennan, J., dissenting).

Although Justice Brennan presents a logical and legitimate reading of the majority's opinion, we find this dicta ambiguous. Alternatively, the majority opinion may imply that the district court in *Mitchell* could not reach the qualified immunity question because the law with respect to Title III was clearly established, not because qualified immunity never applied to a Title III claim. We base this interpretation partly on the specific language in *Harlow* that refers to "statutory and constitutional violations," and on the Supreme Court's statement, albeit also dicta, in *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In *Davis,* the Court held that "public officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.* at 194. In a footnote that further explains its holding, the Court stated that "officials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some *other* statute or regulation." *Id.* at 194 n. 12, 104 S.Ct. 3012. The language of this footnote, although ambiguous, seemingly implies that public officials may claim qualified immunity when sued for statutory violations. At best, the tension and ambiguity surrounding *Mitchell* and *Davis* illustrate the difficulty of our task in this case.

■ Ultimately, we believe that the Court intended to apply qualified immunity to statutory violations and we thus hold that a defendant may claim qualified immunity in response to a Title III claim. We fail to see the logic of providing a defense of qualified immunity to protect public officials from personal liability when they violate constitutional rights that are not clearly established and deny them qualified immunity when they violate statutory rights that similarly are not clearly established.

■ Turning again to the facts of this case, we must examine whether the law surrounding Title III was clearly established to put Wright on notice that his actions violated Title III. Wright claims that he relied on the exception to Title III because he believed the Ohio wiretap statute "authorized" him to record the police department's phone lines. As we stated above, the dearth of law surrounding the administrative exception within the Ohio wiretap statute fails to clearly establish whether Wright's activities violated the law. This court has not discovered case law that discusses the good faith defense of Title III with respect to a similar statutory provision, let alone the administrative exception of the Ohio statute. Nor has Ohio or federal law fully explained the meaning of "statutory authorization" under Title III. *See, e.g., United States v. Wuliger,* 981 F.2d 1497, 1507–08 (6th Cir.1992) (rejecting defendant's argument that Ohio Code of Professional Responsibility was a court order or statutory authorization that allowed him to use secretly recorded tapes in court proceedings). Consequently, we hold that Wright is entitled to qualified immunity under Title III.

### III.

■ Plaintiffs also allege that Wright "surreptitiously monitored them . . . through other electronic devices and equipment." As the district court pointed out, Plaintiffs' pleadings and affidavits allege that Wright also may have done the following: "(1) Chief Wright may have installed intercoms disguised as carbon monoxide detectors; (2) Chief Wright may have used these intercoms to eavesdrop on conversations that plaintiffs reasonably believed were private; and (3) Chief Wright may even have monitored the plaintiffs' conversations from his home, via telephone modem." With respect to these allegations, the Ohio wiretap statute provides no

exception for Wright's conduct. *Berger, Katz* and their progeny imply that such surveillance, in the absence of a warrant or other reasonable interpretations of the law, violates the Fourth Amendment. Wright has cited no case law that suggests such calculative monitoring of employees is constitutionally permissible. We find that Wright's actions could not reasonably fall within the protection of the Ohio wiretap statute and, assuming the allegations in Plaintiffs' complaint to be true, Wright may have violated Plaintiffs' rights under § 1983, Title III, and the Ohio wiretap statute. Thus, Wright is not entitled to qualified immunity with regard to these claims and we leave these issues for the district court to resolve on remand.

### IV.

At this juncture, the parties present us only with the limited issue of whether the district court improperly denied Wright's claim of qualified immunity. We hold that the district court erred when it found that it was not objectively reasonable for Wright to conclude that he did not violate clearly established law by installing and using a recording system on the police department's phones as permitted by Ohio law. However, we affirm the district court's finding that proceedings may continue on the remaining allegations. Because qualified immunity presents a question of law, we need not remand to the district court on that issue. Accordingly, we REVERSE in part, AFFIRM in part, and REMAND to the district court for proceedings consistent with this opinion.