Ronnie HARRIS, Plaintiff—Appellant,

v.

CITY OF CLEVELAND, et al., Defendant—Appellee.

No. 99–4403.

United States Court of Appeals, Sixth Circuit.

March 26, 2001.

Before DAUGHTREY, GILMAN, Circuit Judges, and COLLIER,* District Judge.

PER CURIAM.

Plaintiff–Appellant Ronnie Harris appeals the district court's order dismissing on procedural grounds his claims against Defendant–Appellees Cleveland Police Officer Debra Harrison ("Harrison"), Akron Police Officer Raphael Caprez ("Caprez"), Cleveland Police Officer Henry O'Bryant ("O'Bryant"), Geauga County Deputy Sheriff James A. Gilchrist ("Gilchrist"), and DEA Resident Agent James P. Hummel ("Hummel"). Appellant filed his claims under the provisions of 42 U.S.C. § 1983, the application of that law under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the tort laws of Ohio. Because we find no abuse of discretion and no reversible error, we AFFIRM the decision of the district court.

## I. FACTS

On January 13, 1997, Appellant Harris, an African–American businessman, arrived at the Cleveland Hopkins Airport aboard a flight from Fort Lauderdale, Florida. Upon deplaning, Appellant was targeted by a drug interdiction task force operating at the airport.[1] The task force included Appellees Harrison, Caprez, O'Bryant, and Gilchrist. Two of the task force officers ("TFOs")[2] approached Appellant and asked to speak with him. Appellant refused. The TFOs did not identify themselves and were not dressed in a fashion that would have made their identity readily apparent. The TFOs followed Appellant to the baggage claim area, where they again asked to speak with him. Appellant again refused, asking them · to leave him alone. The TFOs then arrested Appellant. According to Appellant, the TFOs refused his request to see their identification. Appellant was charged with assault on a peace officer, aggravated disorderly conduct, and resisting arrest. Appellant was subsequently tried and acquitted of all charges.

On January 13, 1998, Appellant filed suit against the TFOs, the City of Cleveland, the City of Akron, the County of Cuyahoga,[3] and John Doe supervisors and supervisory agencies in the United States District Court for the Northern District of Ohio. Appellant alleged various federal civil rights claims under 42 U.S.C. § 1983, as well as state law claims for malicious prosecution and assault.

On January 14, 1998, Appellant sent a copy of the summons and complaint to each defendant by certified mail. According to a certificate of service filed by Appellant's attorney, Defendant Cuyahoga County and Defendant City of Akron signed for the complaint. The certificate also states Appellee Caprez signed for the complaint, but this is disputed by Caprez. Appellant's attorney further stated additional copies of the complaint had been sent to the other defendants by regular mail. On March 31, 1998, Appellees Har-

---

* The Hon. Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. The task force was organized by the Drug Enforcement Administration and staffed by local and federal law enforcement officers.

2. The individual Appellees will be collectively referred to as the "TFOs."

3. Appellant apparently believed Deputy Gilchrist was employed by the Cuyahoga County Sheriff's Department. Appellee Gilchrist is actually employed by the Geauga County Sheriff's Department.

rison, O'Bryant, and Caprez moved to dismiss for lack of personal jurisdiction due to Appellant's failure to perfect service; Appellee Gilchrist apparently did not join in this motion because he had not been served at all.

On May 12, 1998, the day before the deadline for service of process under Rule 4 of the *Federal Rules of Civil Procedure,* Appellant filed an amended complaint, naming the Department of Justice, the Drug Enforcement Administration ("DEA"), and John Doe supervisors of the DEA as additional defendants. The defendants again moved to dismiss for lack of personal jurisdiction.

On August 25, 1998, following an order issued by the district court, Appellant filed a second amended complaint, dropping his claims against the federal defendants, the Cities of Akron and Cleveland, and the County of Cuyahoga but naming for the first time James P. Hummell and John Doe, DEA Agents assigned to the Cleveland DEA office. On September 14, 1998, the TFOs and Hummel moved to dismiss the second amended complaint for lack of personal jurisdiction.

Finally, following Appellees' motion to dismiss the second amended complaint, Appellant attempted to cure the deficiency of service. His process server first tried to obtain the TFOs' home addresses from their respective employers. After this effort failed, the process server asked co-workers of the TFOs to pass along copies of the summons and complaint. Appellant filed four returns of service in November 1998, representing personal service had been perfected on each of the TFOs on either November 6 or 10, 1998.[4] Each TFO signed an affidavit denying personal service had been made.

On October 26, 1999, the district court granted Appellees' motion and dismissed the case. The district court dismissed Appellant's civil rights claims against the TFOs in their individual capacities for failure to perfect service of process, his civil rights claim against Hummel and Doe in their individual capacities for failure to state a claim, and all his tort claims against the TFOs and Hummel in their official capacities for lack of subject matter jurisdiction. Appellant filed his notice of appeal on November 9, 1999.

## II. DISCUSSION

### A. Lack of Personal Jurisdiction over the TFOs in Their Individual Capacities

■ Appellant's first assignment of error concerns the district court's dismissal of his claims against the TFOs in their individual capacities for lack of personal jurisdiction. This Court reviews the dismissal of an action for failure to effect service under an abuse of discretion standard. *Habib v. General Motors Corp.,* 15 F.3d 72, 73 (6th Cir.1994).

■ Appellant sued the TFOs in their individual capacities for civil rights violations pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics.* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (allowing a plaintiff to sue a governmental employee in his individual capacity for an alleged constitutional violation). Rule 4 of the *Federal Rules of Civil Procedure* requires a plaintiff to perfect personal service on each defendant. FED. R. CIV. P. 4(e)(2). This rule applies in cases involving *Bivens* claims. *See Ecclesiastical Order of Ism of Am, Inc. v. Chasin,* 845 F.2d 113, 116 (6th Cir.1988).

---

4. Appellant's process server signed an affidavit stating he had personally served someone he believed was Appellee Caprez and had left summonses and complaints with the supervisors of the other three Appellees, who promised to "personally" give the documents to the Defendants.

Without such personal service, a district court is without jurisdiction to render judgment against the defendant. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir.1991) (finding service by mail without an acknowledgment of receipt is insufficient); *Ecclesiastical Order of Ism of Am*, 845 F.2d at 116 (finding service on a defendant's employer is insufficient). Whether a defendant had notice of the legal action, despite lack of personal service, is immaterial. *Friedman*, 929 F.2d at 1155.

▮ Rule 4 further requires a plaintiff to perfect service on a defendant within 120 days of filing a complaint naming that defendant. FED. R. CIV. P. 4(m). A plaintiff cannot extend the service period with respect to an already-named defendant by filing an amended complaint naming additional defendants. *See* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1137, at 103 (Supp. 2000). In the absence of a showing of good cause, failure to timely serve a defendant mandates dismissal. *Habib*, 15 F.3d at 73. The plaintiff bears the burden of showing good cause for failure to timely serve. *Id.* "The determination of good cause is left to the sound discretion of the district court." *Id.* Inadvertence or half-hearted efforts to serve do not constitute good cause. *Friedman*, 929 F.2d at 1157.

▮ The district court found Appellant failed to serve the TFOs in person within the mandated 120 days.[5] Appellant concedes this fact. The district court further found Appellant had failed to show good cause excusing his failure to serve the TFOs. Appellant argues the district court abused its discretion in making this finding. In particular, Appellant states the district court took insufficient account of

his inability to serve the TFOs, asserting the refusal of Appellees' employers to disclose to him the home addresses and work locations of Appellees constituted good cause to excuse his failure to timely serve them.

In the absence of a justification for such a refusal on the part of an employer, some courts have declined to dismiss for a plaintiff's failure of timely service. *See Blessinger v. United States*, 174 F.R.D. 29 (E.D.N.Y.1997). The *Blessinger* court held dismissal for failure to perfect service was unwarranted under the "good cause" exception when the plaintiff made reasonable and diligent efforts to perfect service and the defendant would suffer no prejudice from the delay. *Id.* at 31.

The district court, citing *Blessinger*, found Appellant did not act reasonably or diligently prior to the refusal of the TFOs' employers to disclose their home addresses. It based its decision on Appellant's lack of effort to perfect service within the mandated 120 days, stating Appellant had been on notice service had not been perfected well over a month before the 120-day service period expired. Rather than rectifying the problem in a timely fashion, Appellant waited for almost ten months after filing his initial complaint before he attempted to obtain the TFOs' home addresses from their employers. Appellant explained away his tardiness by arguing the TFOs were either dodging service or unable to be served due to their undercover status. The district court dismissed these attempts to show good cause, noting Appellant had offered no evidence of evasion and had made no attempt to arrange for service by alternate means.

We do not believe the district court abused its discretion in finding Appellant

---

**5.** Even assuming Appellant's process server had personally served Appellee Caprez, he did so nearly six months after the 120-day service period had expired. The other Appellees were never personally served.

acted unreasonably in waiting so long to attempt personal service. In the absence of a reasonable effort to perfect service within the mandated period, the district court did not need to consider whether Appellant had an excuse arising outside that mandated period. Because we agree with the district court's conclusion that Appellant's efforts were neither reasonable nor diligent, we find there was no abuse here.

## B. Failure to State a Claim Against Hummel in his Individual Capacity

■ Appellant's second assignment of error concerns the district court's dismissal of his *Bivens* claim against Hummel in his individual capacity for failure to state a claim upon which relief can be granted. This Court reviews a district court's dismissal of an action pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* de novo. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir.1997). When considering a Rule 12(b)(6) motion, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). This Court also reviews decisions regarding qualified immunity de novo. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir.1999), *cert. denied*, 528 U.S. 1136, 120 S.Ct. 980, 145 L.Ed.2d 930 (2000).

■ Under the doctrine of qualified immunity, a law enforcement official performing a discretionary function may be immune from civil liability in a *Bivens* action if his conduct does not violate clearly established statutory or constitutional rights. *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The plaintiff bears the burden of showing the defendant who claims qualified immunity is not entitled to it. *Blake*, 179 F.3d at 1007. To do this, a plaintiff must present specific allegations of prohibited conduct. *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987). In particular, a plaintiff must establish with particularity that a defendant *himself* has violated some clearly established statutory or constitutional right in order to strip that person of the protection of qualified immunity. A plaintiff may not, therefore, rely solely on the doctrine of respondeat superior in order to defeat a supervisor's assertion of qualified immunity. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (requiring in the context of a § 1983 action that liability of supervisory personnel be based on something more than the theory of respondeat superior); *Jones v. City of Memphis*, 586 F.2d 622, 623 (6th Cir.1978) (same). Failure to meet this burden subjects the plaintiff to dismissal under Rule 12(b)(6).

■ Appellant claims Hummel "promoted and permitted" unconstitutional policies and practices, including assault, racial profiling, unreasonable searches and seizures, and false charges designed to cover improper official conduct. The district court found Appellant had not alleged specific facts showing how Hummel promoted or permitted the events underlying Appellant's lawsuit, let alone the practices enumerated above. Hence, the district court found Appellant had not presented specific allegations of illegal conduct sufficient to foreclose Hummel's immunity defense. Accordingly, the district court dismissed Appellant's claim against Hummel pursuant to Rule 12(b)(6).

The district court made the proper determination based on the allegations presented. If Appellant had actually shown Hummel promoted racial profiling, for example, then he might have stated a cognizable claim. But instead he offered only a catalog of assertions. Appellant presented

no evidence as to any of the four generalized practices enumerated above. *See United States v. Saucedo,* 226 F.3d 782, 790 (6th Cir.2000) (holding in the context of an evidence suppression hearing that a claim of racial profiling must be supported by "direct, circumstantial, or statistical evidence," not mere speculation). Accordingly, Appellant failed to meet his burden of showing Hummel should be deprived of qualified immunity. The district court therefore properly dismissed the claims against Hummel.

## C. Lack of Subject Matter Jurisdiction Over Appellant's Common Law Tort Claims

 Appellant's third assignment of error concerns the district court's dismissal of his state common law tort claims against the TFOs in their official capacities for lack of subject matter jurisdiction. This Court reviews a district court's legal conclusions in dismissing an action pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure* de novo and its factual findings for clear error. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1135 (6th Cir.1996).

 A plaintiff has the burden of proving jurisdiction in the face of a Rule 12(b)(1) motion. *Id.* at 1134. Under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–80, lawsuits against governmental employees acting in their official capacities are treated as suits against the government, *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The United States has consented to defending common law tort claims for assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution. 28 U.S.C. § 2680(h). However, the FTCA requires a plaintiff to exhaust administrative remedies prior to instituting such a lawsuit. *Id.* § 2675(a); *see McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (holding that exhaustion is a prerequisite to filing suit under the FTCA); *Lundstrum v. Lyng,* 954 F.2d 1142, 1145 (6th Cir.1991) (same). Denial of an administrative claim is statutorily presumed if six months pass without action on a properly filed administrative claim. 28 U.S.C. § 2675(a). There is no equitable exception to the jurisdictional prerequisites of the FTCA. *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir.1982).

Appellant's second amended complaint included allegations of torts committed by governmental employees acting in their official capacities. Appellant's claims are cognizable, if at all, under the FTCA. Accordingly, the district court properly applied FTCA law to its decisions regarding those claims. In particular, the district court found Appellant had not conformed to the administrative exhaustion requirement of the FTCA, under which he should have filed a claim with the appropriate federal agency and waited for the claim to be denied before filing suit. Hence, the district court found it lacked subject matter jurisdiction over Appellant's tort claims.

 Under even the most generous reading of the facts, we see no error in the district court's actions. Appellant filed an administrative tort claim under the FTCA in May 1998, four months after he filed his original complaint and the same month he filed his first amended complaint, in which he states claims that invoke the FTCA.[6]

---

6. Appellant claims he first learned the TFOs were a part of the DEA task force when

Defendants filed their first motion to dismiss.

Appellant filed his second amended complaint (the subject of the district court's order of dismissal) in August 1998, less than six months after he filed his administrative claim and before any action on it had been taken. Appellant argues six months did eventually pass with no resolution of his claim prior to the district court's dismissal of the second amended complaint. This is beside the point. Under the plain language of the statute as interpreted by this Court, the district court procedurally lacked subject matter jurisdiction to hear Appellant's FTCA claim in the second amended complaint because the claim had not yet become ripe when the complaint was filed. Dismissal was therefore appropriate.

## III. CONCLUSION

Upon review of Mr. Harris's assignments of error, the record in its entirety, the briefs of the parties, and the arguments of counsel, this Court concludes the district court neither abused its discretion nor committed reversible error. Accordingly, the decision below is AFFIRMED.