**Leora PRICE, Plaintiff–Appellant,**

v.

**Frank Vance TURNER; El Dorado County, Defendants–Appellees.**

No. 00–15026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2001

Filed Aug. 14, 2001

F.2d 852, 866 (9th Cir.1992) (citing *Forrester v. White*, 484 U.S. 219, 228–30, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

William C. Dresser, San Jose, California, for the plaintiff-appellant.

Marjorie E. Manning and Kevin W. Reager, Bolling, Walter & Gawthrop, Sacramento, California; Franklin G. Gumpert, Backett, Gumpert & Reiner, Sacramento, California, for the defendants-appellees.

Before: SCHROEDER, Chief Judge,
LAY* and THOMPSON, Circuit Judges.

## OPINION

SCHROEDER, Chief Judge:

The principal issue in this appeal is whether certain private cordless telephone conversations are protected from interception by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communication Privacy Act of 1986 (hereafter the "Wiretap Act"). *See* 18 U.S.C. §§ 2510, 2511. The district court granted summary judgment for the defendants because all relevant intercepted cordless telephone calls in this case were placed at a time when the Wiretap Act permitted the interception of cordless telephone communications without exception. We agree with the district court and affirm.

The plaintiff, Leora Price, sometimes called her friend Laura Beckman and also occasionally used the Beckmans' family phone. Some of Price's calls were placed to or from the Beckmans' cordless phone. One defendant is Frank Turner, a neighbor of the Beckmans, who was able to monitor the Beckmans' conversations on their cordless phone by using a radio scanner he purchased at Radio Shack. Turner apparently began the monitoring in 1989, and in June 1991, he contacted the El Dorado County Sheriff's Department to report that he had overheard cordless phone conversations between unidentified parties discussing illegal drug transactions. Sheriff's officers told Turner to continue

the monitoring and instructed him to report conversations pertaining to illegal activity, providing him with written authorization and a voice-activated recorder. Turner began recording most of the conversations picked up by his AM/FM radio scanner, and provided taped recordings to law enforcement officers.

During the course of proceedings not directly related to this litigation, it came to the attention of plaintiff's counsel in this case that Price was a party to some of the indiscriminately recorded phone conversations. Price then filed this action against Turner and the County of El Dorado in state court, alleging violations of both state and federal law. After extensive discovery, the district court granted defendants' motions for summary judgment as to Price's federal claims, remanding her state claims back to the state superior court. Price appealed.

Price contends that Turner's conduct violated the Wiretap Act, which forbids the nonconsensual interception and disclosure of "wire, oral, or electronic communications." *See* 18 U.S.C. § 2511. All of the identified intercepted cordless phone communications in this case took place prior to the 1994 amendments to the Wiretap Act. The question of whether Turner violated the Act by intercepting those communications can be answered by tracing the Act's legislative history.

As a preliminary matter, however, we need to understand the nature of cordless phone communications. This case involved Turner's interception by use of a common radio scanning device of the radio wave component of the Beckmans' cordless phone transmissions. When a cordless phone is used, the parties' words travel over the radio waves between the base

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit sitting by desig-

nation.

unit of the phone and its headset. *See Askin v. McNulty,* 47 F.3d 100, 104 (4th Cir.1995). Those radio waves can be easily intercepted and overheard by anyone listening on an ordinary radio receiver. *See McKamey v. Roach,* 55 F.3d 1236, 1239–40 (6th Cir.1995); *United States v. Smith,* 978 F.2d 171, 178–79 (5th Cir.1992) ("The significant difference between land line telephone conversations and conversations carried out over early versions of cordless phones was the ease with which cordless phone conversations could be intercepted.").

At the time of its original enactment in 1968, the Wiretap Act did not expressly refer to the monitoring of radio transmissions. When Congress enlarged the Act's coverage in 1986, Congress explicitly excepted protection for the "radio portion of a cordless telephone communication." *See* 18 U.S.C.A. § 2510(1), (12)(A) (West 1990). It was not until 1994 that Congress amended the Act to prohibit the interception of cordless telephone communications.[1] Very recently, the Supreme Court outlined the history of the Wiretap Act. *See Bartnicki v. Vopper,* 531 U.S. 990, 121 S.Ct. 1753, 1759–60, 149 L.Ed.2d 787 (2001). A more comprehensive discussion is contained in *McKamey v. Roach,* 55 F.3d 1236, 1240 (6th Cir.1995).

■ The Supreme Court's decision in *Bartnicki* was issued after the district court's summary judgment in this case, and involved First Amendment interests rather than a claim by a private party against another private party alleging a direct violation of the Wiretap Act. The Court's analysis and history of the Act is, however, authoritative and leaves no doubt that the Act did not protect cordless phone conversations that took place before the statutory amendment in 1994. Given the Court's favorable citations to the Sixth Circuit's analysis in *Nix v. O'Malley,* 160 F.3d 343, 346 (6th Cir.1998), and in *McKamey,* 55 F.3d at 1240, there can be no question that interceptions of cordless phone communications prior to 1994 do not violate the Wiretap Act. *See Bartnicki,* 121 S.Ct. at 1759–60 & n. 7; *see also McKamey,* 55 F.3d at 1240 (holding that before 1994, § 2510(1) and (12)(A) permitted the interception of cordless telephone communications without exception). In this case, none of the intercepted conversations that Price has been able to identify took place after 1993.

The 1986 Wiretap Act's exception for cordless telephone communications was contained in the Act's definition of both "wire communications" and "electronic communications." *See* 18 U.S.C.A. § 2510(1), (12)(A) (West 1990). Probably for that reason, Price attempts to maintain that cordless phone conversations are nevertheless protected by the Act as an "oral communication," which is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." *See* 18 U.S.C.A. § 2510(2) (West 1990). The interpretation urged by Price, however, would render the definition of "oral communications" inconsistent with the statutory definitions of "wire" and

---

1. Title 18 U.S.C. § 2511 prohibits the interception and disclosure of "wire, oral, or electronic communications." The 1990 definitions of "wire communication" and "electronic communication" expressly provided that such terms did "not include the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit." *See* 18 U.S.C.A. § 2510(1), (12)(A) (West 1990).

When Congress amended the Wiretap Act in 1994, it simply omitted the above language excepting the radio portion of cordless phone communications. *See* 18 U.S.C. § 2510(1), (12) (2000).

"electronic" communications. Moreover, an oral communication must be one "uttered by a person," and the interception or disclosure of an oral communication must be of the communication itself. *See id.; Smith,* 978 F.2d at 175–76. The interception of a cordless phone's radio transmission is not an interception of the oral utterance itself, but of the radio signal produced by the phone's handset and its base unit. Therefore, the interception of a cordless phone transmission cannot be the interception of an oral utterance. This is the precise holding of the Sixth Circuit in *McKamey, see* 55 F.3d at 1239, which we noted has been cited with approval by the Supreme Court in *Bartnicki,* 121 S.Ct. at 1759 n. 7, and with which we are in full agreement. The district court therefore properly granted summary judgment on Price's federal claim that Turner violated the Wiretap Act, because the Act provided no protection for her cordless calls at the time Turner intercepted them.

■ Price also claims that Turner's interceptions violated her federal constitutional right to privacy. To better understand this claim, some explanation of the technological history of the cordless telephone is helpful.

As we have discussed, at the time of the Wiretap Act's original enactment, and continuing through the time it was amended in 1986 to expressly exclude protection for cordless telephone communications, cordless phones acted essentially as a radio transmitter and could "be intercepted easily with readily available technology, such as an AM radio." *See* S.Rep. No. 541, 99th Cong., 2d Sess. 12 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3566. Congress therefore concluded that it would be inappropriate to criminalize the interception of such communications. *See id.* Later, when technological advances made it more difficult to intercept cordless radio trans-

missions, Congress again amended the Act to include protection for cordless phone transmissions that could no longer be analogized to AM/FM radio transmissions. *See* H.R.Rep. No. 827, 103d Cong., 2d Sess. 10, 17–18, 30 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489, 3490, 3497–98, 3510 (concluding "that continued change in the telecommunications industry deserves legislative attention to preserve the balance sought in 1968 and 1986 ... namely, the goal of ensuring that the telecommunications industry was not hindered in the rapid development and deployment of the new services and technologies that continue to benefit and revolutionize society"); *see also Smith,* 978 F.2d at 178–80.

■ Price obliquely argues that Turner, acting on behalf of the County, violated her constitutional right to privacy by intercepting the phone transmissions. In order to establish a Fourth Amendment claim, one must have an objectively reasonable expectation of privacy. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Katz v. United States,* 389 U.S. 347, 351–53, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Maisano v. Welcher,* 940 F.2d 499, 503 (9th Cir.1991). At the time of Price's cordless phone conversations, they were readily susceptible to interception. For that very reason, the transmissions were not protected by the Wiretap Act. Price cannot be said to have had an objectively reasonable expectation of privacy in those communications.

■ Cordless phones aside, Price contends that her reasonable expectation of privacy is demonstrated by the nature of the conversations which addressed intimate subjects that ordinarily would not be discussed publicly. She may well have had a subjective expectation that her conversations would not have been overheard, but the standard is one of objective reasonableness. *See United States v. Sandoval,*

200 F.3d 659, 660 (9th Cir.2000) ("Only if both the subjective and objective tests are met can we find that a Fourth Amendment interest has been violated."). The subject matter of Price's conversations is therefore irrelevant.

 She also indirectly raises a civil rights claim against the County, under 42 U.S.C. § 1983, based on the County's authorization and dissemination of Turner's recordings. To succeed on this claim, Price must be able to establish that the County's actions constituted an unconstitutional policy or practice that resulted in a violation of her civil rights. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). She has not met this burden, and the County cannot be liable under § 1983 on a theory of respondeat superior. *See Meehan v. County of Los Angeles,* 856 F.2d 102, 106–07 (9th Cir.1988).

The judgment of the district court must therefore be affirmed in its entirety.

The County has moved to strike Price's untimely supplemental excerpts of record. That motion is GRANTED. Defendants have also requested sanctions, but that motion is DENIED because we cannot say that Price's appeal is entirely frivolous on the basis of the law that existed at the time of the notice of appeal and briefing.

AFFIRMED.