**Vernon D. FRIERSON**

v.

**Tommy GOETZ**

No. 1–01–0119.

United States District Court,
M.D. Tennessee,
Columbia Division.

Oct. 10, 2002.

Phillip Leon Davidson, Nashville, TN, for Vernon D. Frierson.

Patrick A. Flynn, Fleming, Flynn & Sands, Columbia, TN, for Tommy Goetz.

### MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendant's motion (filed July 19, 2002; Docket Entry No. 15) and memorandum (Docket Entry NO. 16) in support and the plaintiff's response (filed August 12, 2002; Docket Entry No. 25) and memorandum (Docket Entry No. 26) in opposition.

The Court has subject matter jurisdiction over the plaintiff's claims under Title 18, United States Code, Section 2510 *et seq.*, and Title 42, United States Code, Section 1983, pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

For the reasons set forth below, the Court shall grant the defendant's motion.

### I.

The plaintiff, Vernon D. Frierson, a resident of Maury County, Tennessee, filed this action on November 7, 2001, against the defendant, Tommy Goetz, who was an investigative officer employed by the City of Mt. Pleasant, Tennessee, and assigned to the Maury County Drug Task Force, in his individual capacity. The plaintiff alleges that the defendant violated his Fourth Amendment right to be secure in his person against unreasonable searches by violating Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510–2522 ("the Federal Wiretap Act"). Specifically, he alleges that the defendant unlawfully intercepted communications he made while talking on a cordless telephone. As a result, the plaintiff was arrested and was fired from his job as a police officer for the City of Lewisburg, Tennessee. The plaintiff also asserts state law claims of false light and invasion of privacy.[1]

On or about September 20, 2000, the Maury County Drug Task Force began investigating a man named Michael Wright for drug distribution being conducted at his place of business, T and M Beauty Supply, located on North Main Street in Columbia, Tennessee. His business was placed under twenty-four hour surveillance. During that surveillance, Mr. Wright was observed using a cordless telephone. On November 8, 2000, the defendant placed a scanner in his vehicle to intercept communications conducted over the cordless telephone. In a separate vehicle, the defendant placed another scanner and a recorder attached to it to record those communications intercepted by the scanner.[2]

While monitoring the scanner, the defendant overheard communications between Mr. Wright and a person unknown pertaining to a possible drug transaction.

---

1. The plaintiff also asserted a claim of malicious prosecution. However, in his memorandum the plaintiff conceded that summary judgment should be granted as to this claim.

2. The defendant's vehicle was located on the third floor of a garage building that was across from T and M Beauty Supply. The second vehicle with the other scanner and recorder was located on the second floor of the garage.

Based upon this information, the defendant appeared before the Honorable Jim T. Hamilton, Circuit Court Judge for Maury County, Tennessee, to obtain an order "authorizing the preservation, retention and continued recording of protected communications pursuant to Tenn.Code Ann. § 39–13–604." *See* affidavit (filed July 19, 2002; Docket Entry No. 18), attachment thereto, Exhibit 1. The application was granted. The defendant subsequently showed Assistant District Attorney Brent Cooper the application and order and was advised by him that he had followed the applicable procedures set forth in Tenn. Code Ann. § 39–13–604 to record cordless telephone transmissions at T and M Beauty Supply.

On November 9, 2000, Officer Mike Johnson of the Maury County Drug Task Force telephoned the plaintiff to inquire about Michael Wright. The officer was interested in the location of the T and M Beauty Supply in Lewisburg and where Mr. Wright was residing in Mt. Pleasant. The plaintiff, who was from Mt. Pleasant and sat on the city council there, was familiar with many of the residents of Mt. Pleasant. He also was a police officer with the Lewisburg City Police Department. The defendant and Officer Johnson believed that the plaintiff might naturally be able to provide them information as to these two questions. During this conversation, the defendant asserts that the plaintiff was informed that the questions were with regard to an ongoing investigation of Mr. Wright. The plaintiff, however, disputes this and contends that he did not receive any indication that Mr. Wright was under investigation.

On November 10, 2000, a conversation between Bennie Collins and Mr. Wright was intercepted by the Drug Task Force. Mr. Collins was heard telling Mr. Wright that the plaintiff wanted to talk to him. Mr. Wright asked for the plaintiff's telephone number and immediately after hanging up with Mr. Collins, dialed the plaintiff's number. The defendant and Officer Brian Cook allege that the plaintiff first inquired if Mr. Wright was on a cellular telephone to which he answered in the negative. The plaintiff then proceeded to tell Mr. Wright that he was being watched by the police, that he needed to be careful of what he talked on, that he needed to dispose of his "stash" and that he should "lay low." The plaintiff disputes this assertion and alleges that the two men only conversed about Mr. Wright's ex-girlfriend.[3] The conversation lasted only 48 seconds. Eight and one-half minutes later, Mr. Wright placed a call to Southwest Airlines.

The defendant contacted Assistant District Attorney Bob Sanders to determine if there was sufficient probable cause to arrest Mr. Wright and the plaintiff. General Sanders advised the defendant and Officer Cook that there was sufficient probable cause to arrest both men. Officer Cook applied for and was issued an arrest warrant for the plaintiff. The plaintiff was subsequently arrested that day by Officer Cook. Mr. Wright was charged and later convicted of possession of cocaine with intent to resale. The plaintiff was indicted for conspiracy to sell and/or deliver cocaine and accessory after the fact of the sale and/or delivery of cocaine. However, the evidence obtained through the recording of the plaintiff was later suppressed by Judge Hamilton.

---

**3.** There is no recording of this conversation. According to the defendant, the recorder only picked up feedback.

In his order, Judge Hamilton found that the officers accurately followed the procedures set forth in Tenn.Code Ann. § 39–13–604 for recording cordless telephone communications. Defendant's response (filed August 23, 2002; Docket Entry No. 33) to plaintiff's statement of undisputed facts, attachment thereto, order entered by Judge Hamilton. However, he found that the Federal Wiretap Act preempted Tenn.Code Ann. § 39–13–604 in accordance with the Supremacy Clause of the United States Constitution. He stated:

> Because Tenn.Code Ann. § 39–13–604 lowers the requirements for the seizure of communications made by cordless and cellular telephones, by not requiring that an application, the content of which is based on the Fourth Amendment principles, for an order, authorizing electronic surveillance be submitted, the Federal Wiretapping law preempts Tenn.Code Ann. § 39–13–604.

*Id.*

The plaintiff contends that by violating the Federal Wiretap Act, the defendant violated his right to be free from unreasonable searches. As a result, the plaintiff was arrested and subsequently fired from his job as a police officer. He further suffered degradation and ridicule. In addition to his Fourth Amendment claim, the plaintiff asserts that he has suffered mental anguish, humiliation and embarrassment, damage to his character and reputation, loss of privacy and loss of wages.

■ The defendant contends that he is entitled to the good faith defense provided under the Federal Wiretap Act. He also contends that he is qualified immune from the plaintiff's constitutional and Federal Wiretap claims. The defendant further contends that he is entitled to a judgment as a matter of law because he did not know nor had reason to know that the use of the recordings was a violation of the law. With regard to the state law claims, the defendant contends that any statements made by him concerning the content of the recordings were absolutely privileged.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991). In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.,* 921 F.2d at 1349; *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). An issue of material fact is one which, under the substantive law governing the issue, might affect the outcome of the suit. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

In addition, a dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4] *Id.*

4. The Supreme Court of the United States further explained that a court must determine

at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.*, 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

### III.

The plaintiff contends that his communications were unlawfully intercepted in violation of the Fourth Amendment and the Federal Wiretap Act. The plaintiff asserts that the defendant did not properly apply for an order authorizing or approving the interception of an oral communication pursuant to 18 U.S.C. § 2518. In response, the defendant contends that he reasonably and in good faith relied on a valid court order authorizing the preservation, retention and continued recording of protected communications and on statutory authorization under the Tenn.Code Ann. § 39–13–604. As a result, he asserts the good faith defense under the Federal Wiretap Act and the defense of qualified immunity. The Court finds that the defendant is entitled to qualified immunity for the plaintiff's claims under the Fourth Amendment and the Federal Wiretap Act.

The purpose of the Federal Wiretap Act was to forbid electronic surveillance and interception of those communications which qualified as wire, oral or electronic communications, as defined by that statute. *Blake v. Wright*, 179 F.3d 1003, 1011 (6th Cir.1999). The Act provides that "any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" is subject to criminal sanctions and civil suit. 18 U.S.C. §§ 2511(1)(a), 2520(a).[5] The Act also provides criminal and civil liability for anyone who intentionally discloses or uses the contents of an illegally intercepted communication, knowing or having reason to know that information was illegally obtained. 18 U.S.C. § 2511(c), (d). However, the Act explicitly provides a good faith exception as a complete defense against any civil or criminal

---

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

**5.** Section 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate."

action brought under the statute if the person had a good faith reliance on (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization; (2) a request of an investigative or law enforcement officer; or (3) if the person falls under the exceptions pertaining to persons or entities that provide an electronic communication service to the public. 18 U.S.C. § 2520(d)(1)-(3).

The Wiretapping and Electronic Surveillance Act of 1994, codified as Tennessee Code Ann. § 40–6–301 et seq., parallels the Federal Wiretap Act and similarly prohibits the unauthorized interception and disclosure of oral communications. However, the Federal Wiretap Act was amended in 1994 and, unlike Tenn.Code Ann. § 40–6–301 et seq., now applies to cordless telephones. McKamey v. Roach, 55 F.3d 1236, 1238 n. 1 (6th Cir.1995). Originally, cordless telephone communications were excepted from the Federal Wiretap Act. In defining "wire" and "electronic" communication, the pre–1994 federal law explicitly excluded cordless telephones. These exceptions were removed by Congress in 1994. Id.

Tennessee Code Ann. § 40–6–301 et seq. was adopted in 1994 and, although amended in 1996, excepts cordless telephones from the definition of "electronic communication." Section 40–6–303(7) defines "electronic communication" as:

any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by the aid of wire, radio, electro-magnetic, photooptical, or photoelectronic facilities, but does not include:

(A) The radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit;

(B) Any wire or oral communication . . . .

Tenn.Code Ann. § 40–6–303(7). Similarly, Section 40–6–303(19) defines "wire communication" as:

any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . [but] does not include the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit.

Tenn.Code Ann. § 40–6–303(19).[6]

Like the Federal Wiretap Act codified at 18 U.S.C. § 2518, § 40–6–304 of the Tennessee Code sets forth the procedures for applying for an order authorizing the interception of wire, oral or electronic communications. In his amended complaint (filed Nov. 19, 2001; Docket Entry No. 3), ¶ 3.9, the plaintiff alleges that the defendant did not comply with the procedures as set forth in 18 U.S.C. § 2518 in applying for such an order. In particular, the plaintiff contends that the defendant did not state that other investigative procedures were tried and failed or why such procedures were unlikely to succeed if tried or that they would be too dangerous if tried. See 18 U.S.C. § 2518(1)(c).[7] In-

---

6. Tennessee Code Ann. § 40–6–303(7) and (19) is almost identical to the wording used in the Federal Wiretap Act prior to the 1994 amendments.

7. Tennessee Code § 40–6–304 requires the same information as 18 U.S.C. § 2518 when applying for an order authorizing the inter-ception of wire, oral or electronic communications. The application shall include the following: (1) the identity of the investigative officer; (2) a full statement of the facts and circumstances relied upon as justification for the order; (3) whether other investigative techniques have been tried and, if not, then

stead, the defendant relied on Tenn.Code Ann. § 39–13–604, which separately addresses the interception of cordless telephone communications.

Section 39–13–604(f)(1) provides that a law enforcement officer may record a protected communication where the preservation and the retention of the recording is pertinent to a criminal investigation. The officer must provide the name of the officer making the recording and the time and date the recording was made. *Id.,* § 39–13–604(f)(2). Within 48 hours of making the recording, the officer must make an application to a judge for an order authorizing the continued recording and preservation and retention of recordings already made. *Id.,* § 39–13–604(f)(3). The officer must also certify to the judge that the recording is pertinent to the investigation, the nature of the offense and the address of the location of the cordless communication intercepted. *Id.,* § 39–13–604(f)(4).

The defendant complied with the procedures set forth in § 39–13–604 in making his application before Judge Hamilton, and an order authorizing the interception and preservation and retention of such recording was issued. The defendant argues that he relied on Tenn.Code Ann. § 39–13–604, which qualifies as "statutory authorization" under 18 U.S.C. § 2520(d)(1). He also asserts that he relied on the court order entered by Judge Hamilton, which also qualifies under the good faith defense provided under 18 U.S.C. § 2520(d)(1). He further argues that he relied on the advice of General Cooper regarding the application and order authorizing such an interception. Thus, the defendant contends that a reasonable officer acting in "good faith" would believe that he could

implement the interception and recording of cordless telephone conversations pursuant to the statutory exception provided in Tenn.Code Ann. § 39–13–604 and pursuant to the November 8, 2000, court order. The defendant further argues that he is entitled to qualified immunity.

Qualified immunity is an immunity from suit that extends to government officials performing discretionary functions. *Blake,* 179 F.3d at 1007. Government officials acting in their official capacities are not liable for civil damages if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."). "The statutory or constitutional rights in question must have been 'so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Cullinan v. Abramson,* 128 F.3d 301, 309 (6th Cir. 1997) (citations omitted). "This 'objective reasonableness' standard focuses on whether defendants reasonably could have thought that their actions were consistent with the rights that plaintiff claims have

why; (4) a statement of the period of time for which the interception is required to be maintained; and (5) a statement of facts concerning previous applications made with regard to

the authorization of interceptions of wire, oral or electronic communications. *See* 18 U.S.C. § 2518 and Tenn.Code Ann. § 40–6–304.

been violated." *Walton v. City of South-field*, 995 F.2d 1331, 1336 (6th Cir.1993).

In determining whether qualified immunity applies, courts are to apply a two-part inquiry. First, courts must decide whether the alleged constitutional or statutory violations were "clearly established" at the time of the alleged violations. *Blake*, 179 F.3d at 1007. A right is "clearly established" if the question has been decided by the Supreme Court, the United States Court of Appeals for the circuit in which the district court deciding the issue sits, the district court itself or case law from other circuits that is directly on point. *Id.* However, "a single recent case from the Court of Appeals of another circuit is hardly sufficient to make the law 'clearly established' in [the Sixth Circuit]." *Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989); *Cullinan*, 128 F.3d at 311 ("Ordinarily, at least, in determining whether a right is 'clearly established' this court will not look beyond Supreme Court and Sixth Circuit precedent."). Courts may also look to the highest state court in the state where the case arose. *Id.* at 706 n. 6. "Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been clearly foreshadowed by applicable direct authority.'" *Blake*, 179 F.3d at 1007 (internal quotations omitted). Further,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very ac-

tion in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531.

Once a court finds that the right is clearly established, the court must next decide "whether a reasonable person in the defendant's position would ·have known that his or her actions violated clearly established rights." *Blake*, 179 F.3d at 1008.[8] The test is an objective standard, and the defendant's subjective intent is irrelevant. *Id.*

■ With regard to the plaintiff's Fourth Amendment claim, the Court must determine whether the plaintiff had a reasonable expectation of privacy while using a cordless telephone. The Supreme Court has found that a fundamental right to privacy exists in wire communications under the Fourth Amendment. *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). In· *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967), the Supreme Court held that government agents violate the ·Fourth Amendment by recording private communications without a warrant or court order when a person has a reasonable expectation of privacy. A reasonable expectation of privacy exists if a person has an expectation of privacy that is reasonable under the circumstances. *Id.* (The government violates the Fourth Amendment "when electronically listening to and recording the [person's] words violate[ ] the privacy upon which he justifiably relied . . . ."). Thus, the test has both a subjective and an objective component. This two part standard was summarized in Justice

---

8. The Court notes that if the right is determined to be "clearly established" and barring the pleading of extraordinary circumstances, the defense of qualified immunity will usually fail because "a reasonably competent public official should know the law governing his conduct." *Id.* n. 4 (citation omitted).

Harlan's concurring opinion wherein he articulated:

> As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.

389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 587–88 (Harlan, J., concurring).

The Federal Wiretap Act was first enacted in 1968 and did not apply to the monitoring of radio communications. *Bartnicki v. Vopper,* 532 U.S. 514, 524, 121 S.Ct. 1753, 1759, 149 L.Ed.2d 787, 799 (2001). It was later amended in 1986 to prohibit the interception of "electronic" as well as oral and wire communications. *Id.* The Act was amended again in 1994 and now extends to the interception of conversations over both cordless and cellular telephones. *Id.* Prior to the 1994 amendment, courts uniformly held that a cordless telephone user did not have a reasonable expectation of privacy in his cordless telephone conversations under either the Federal Wiretap Act or the Fourth Amendment. *McKamey,* 55 F.3d at 1239 (collecting cases). The United States Court of Appeals for the Sixth Circuit explained that this was because cordless telephone communications are transmitted via radio waves "to all who wish to overhear" and noted Congress' observation in the 1986 amendments to the Act that radio waves are easily intercepted. *Id.* at 1239–40.

The application of the Fourth Amendment to cordless telephone communications was thoroughly addressed by the United States Court of Appeals for the Fifth Circuit in *United States v. Smith,* 978 F.2d 171 (5th Cir.1992). In determining that the pre–1994 version of the Federal Wiretap Act did not apply to cordless telephone communications, the Court then attempted to determine whether the Fourth Amendment provided protection to the user of a cordless telephone. The Court recognized the difficulty in characterizing cordless telephones as either like traditional land-based telephones or like radio transmitters. *Id.* at 177. It noted that the former was clearly protected by the Fourth Amendment but that pure radio communications were not afforded such protection because " '[b]roadcasting communications into the air by radio waves is more analogous to carrying on an oral communication in a loud voice or with a megaphone than it is to the privacy afforded by a wire.' " *Id.* (citations omitted).

According to the Court, the problem was that cordless telephones did not fit neatly into either category. *Id.* at 178. However, although cordless telephones were not easily characterized, it did not mean that a communication was not entitled to Fourth Amendment protection simply because it was not transmitted over a wire. *Id.* at 179. The Court explained that the significant difference between cordless telephone communications and wire communications

was that conversations over early versions of cordless telephones were very easily intercepted and therefore a user could never have a reasonable expectation of privacy. *Id.; Price v. Turner*, 260 F.3d 1144, 1148 (9th Cir.2001). The Court noted, however, that with the evolution of cordless technology the reasonableness of an expectation of privacy increased as technological advances made it more difficult for cordless communications to be intercepted. *Id.* Some of these advances included limiting the effective range of the cordless telephones to a range of about sixty feet; no longer "pre-setting" cordless telephones to one frequency, enabling them to monitor and select a frequency not being used; broadcasting on radio frequencies not used by commercial radio, which prevents conventional radios from picking up cordless telephone communications; and cordless telephones being able to scramble the radio signal to prevent radio scanners from intercepting such communications. *Id.* The Court stated:

> Courts should bear in mind that the issue is not whether it is *conceivable* that someone could eavesdrop on a conversation but whether it is *reasonable* to expect privacy. No matter how technologically advanced cordless communication becomes, some people will always find a way to eavesdrop on their neighbors. However, "[t]he fact that [Listening] Toms abound does not license the government to follow suit." Although we express no opinion as to what features or circumstances would be necessary to give rise to a reasonable expectation of privacy, it should be obvious that as technological advances make cordless communications more private at some point such communication will be entitled to Fourth Amendment protection.

Given this conclusion, it should be equally obvious that it is not enough for a trial court to conclude that interception of a conversation does not implicate Fourth Amendment concerns simply because it is carried by a "cordless" phone. Application of the Fourth Amendment in a given case will depend largely upon the specific technology used . . . .

*Id.* at 179–80 (emphasis in original) (citations and footnote omitted). The Court concluded:

> [I]n spite of the fact that a defendant uses a cordless phone, the circumstances may show that he also has a reasonable expectation of privacy. . . . [A] trial court must do more than simply conclude that a defendant had no expectation of privacy because he used a cordless phone; instead, the trial court must be prepared to consider the reasonableness of the privacy expectation in light of all the particular circumstances and the particular phone at issue.

*Id.* at 180.

At the state preliminary hearing, the defendant testified that his scanner will not pick up digital or scrambled or encoded cordless telephones. Transcript (filed August 12, 2002; Docket Entry No. 31) of preliminary hearing at 18. It only picks up conversations from analog cordless telephones. *Id.* He further testified that the telephones seized from Mr. Wright's premises bore inscriptions on the back indicating that the persons using such telephones did not have an expectation of privacy. *Id.* at 19.[9] Moreover, both the defendant and Officer Cook attested in their affidavits that the plaintiff was apprehensive enough to inquire of Mr. Wright if he was talking on a cellular telephone, the implication os-

9. The Federal Communications Commission regulations currently require the label on cordless telephones to contain the following statement: "Privacy of communications may not be ensured when using this phone." 47 C.F.R. § 15.214.

tensibly being that the plaintiff was aware that such a communication could be intercepted. Affidavits of Tommy Goetz (Docket Entry No. 18), ¶ 19 and Officer Brian Cook (filed July 19, 2002; Docket Entry No. 19), ¶ 10.

Neither the Supreme Court nor the Sixth Circuit has specifically addressed whether a reasonable expectation of privacy exists under the Fourth Amendment for cordless telephone communications. The Court therefore finds that the law is not "clearly established" that a user of an analog cordless telephone has a reasonable expectation of privacy under the Fourth Amendment.

Moreover, even if all cordless telephones are treated the same, the Court finds that the case law, examined in conjunction with the relevant Tennessee statutes, does not clearly establish that the defendant's actions were unlawful. The defendant argues that a reasonable officer acting in good faith would believe that he could intercept cordless telephone communications pursuant to Tenn.Code Ann. § 39–13–604 and the court order issued by Judge Hamilton. As a result, he contends that the law was not clearly established that his actions were unlawful. The Court agrees.

In *Blake, supra,* the chief of police had a recording device placed on all non-emergency telephone lines of the police station to record all incoming and outgoing telephone calls of the police department's employees, pursuant to an Ohio statute. 179 F.3d at 1006. The employees filed suit for violations of the Fourth Amendment and the Federal Wiretap Act. The chief of police asserted qualified immunity as a defense to both claims. *Id.* The Sixth Circuit held that the defendant was entitled to qualified immunity with regard to the Fourth Amendment claim because "the law regarding the administrative monitor-ing of police telephone lines was sufficiently unclear at the time of the alleged violations that a 'reasonable' officer in [the defendant's] position would not have known he was violating clearly established law." *Id.* at 1010–11. The Court reasoned that at the time the recording device was installed there were no state or federal cases that provided guidance to city officials as to the constitutionality of the Ohio statute. *Id.* at 1010. The Court noted that the plaintiffs did not cite and the Court could not find one case that, at the time of the allegations, pertained to the interpretation of the statute with regard to the administrative monitoring of police telephone lines. *Id.*

Likewise, this Court cannot find any relevant federal or state law to provide guidance in interpreting Tenn.Code Ann. § 39–13–604 with respect to the plaintiff's Fourth Amendment claim. In just a recent opinion by the Tennessee Supreme Court dealing with the Tennessee wiretapping law codified at Tenn.Code Ann. § 40–6–301 *et seq.,* the court recognized that it had not addressed the provisions of the Tennessee wiretap law. *State v. Munn,* 56 S.W.3d 486, 497 (Tenn.2001). It went on to state that it adopted the same standard employed by the Fourth Amendment in determining the extent of protection under the Tennessee wiretap laws, that is, "(1) whether the individual had an actual, subjective expectation of privacy, and (2) whether society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." *Id.*

The highest court in Tennessee to specifically address warrantless interceptions of cordless telephone conversations implicating Tenn.Code Ann. § 39–13–604(f) is the criminal court of appeals in *State v. Pendergrass,* No. 01C01–9306–CR–00169, 1995 WL 108248, at *1 (Tenn.Crim.App.

1995), *rev'd on procedural grounds,* 937 S.W.2d 834 (Tenn.1996). In that case, the court gave a thorough analysis of a user's expectation of privacy in using cordless telephones prior to the 1994 amended Federal Wiretap Act, addressing both federal and state authorities. In addressing the passage of Tenn.Code Ann. § 39–13–604 in 1994, the court stated:

> [A]lthough the legislature declared a public policy that, absent court order at a specified point, cordless telephone conversations are not to be recorded and such recordings are not to be disseminated, it likewise gave official recognition to the fact that the radio broadcast characteristics of a cordless telephone, as a practical matter, make it a means of communication greatly lacking in privacy.

*Id.* at \*14. On remand after being reversed on procedural grounds, the criminal court of appeals affirmed its earlier ruling on the substantive issues, stating, "Since our 1995 opinion, neither this court nor the Tennessee Supreme Court has had occasion to consider the constitutional ramifications of warrantless electronic surveillance of cordless telephone conversations. The United States Supreme Court has been silent on this issue, as well." *State v. Pendergrass,* No. 01C01–9708–CR–00359, 1998 WL 846588, at \*1 (Tenn.Crim.App. 1998).

In light of the fact that the law remains unclear as to the legality of Tenn.Code Ann. § 39–13–604, the defendant complied with the procedures set forth in that statute and was issued a court order authorizing the retention and continuation of such recordings, the Court finds that the a "reasonable" officer in the defendant's position

would not have known that he was violating clearly established law. *Blake,* 179 F.3d at 1010–11. Accordingly, the Court finds that the defendant is entitled to qualified immunity.

With regard to the plaintiff's claim under the Federal Wiretap Act, the Act provides a good faith exception to a criminal or civil action brought pursuant to the statute if the defendant relied on a court order or statutory authorization. 18 U.S.C. § 2520(d)(1). The defendant asserts that like the plaintiff's Fourth Amendment claim he is also entitled to qualified immunity for the plaintiff's claim under the Federal Wiretap Act because he relied on Tenn.Code Ann. § 39–13–604 authorizing the interception of cordless telephone communications as well as the court order entered by Judge Hamilton authorizing the continued recording of such communications. The Court agrees. *See Blake,* 179 F.3d at 1013 (finding that qualified immunity is applicable as a defense to a claim under the Federal Wiretap Act).

As stated previously, the absence of any law relating to the interception of cordless telephone communications, in general, and to Tenn.Code Ann. § 39–13–604, in particular, fails to clearly establish whether the defendant's actions violated clearly established law. *See, e.g., id.* (referring to the administrative exception to the Ohio statute authorizing the monitoring of police telephone lines, the Court stated, "This court has not discovered case law that discusses the good faith defense of Title III with respect to a similar statutory provision .... Nor has Ohio or federal law fully explained the meaning of 'statutory authorization' under Title III.").[10] Accord-

---

10. The plaintiff cites *Spetalieri v. Kavanaugh,* 36 F.Supp.2d 92 (N.D.N.Y.1998) for the proposition that the law was well established in 2000 that the Federal Wiretap Act covered cordless telephone communications. The district court stated, "Whether the 1994 amendments to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the

ingly, the Court finds that the defendant is entitled to qualified immunity with respect to the plaintiff's claim under the Federal Wiretap Act.

The plaintiff argues that the defendant is not entitled to the qualified immunity defense because the law was clearly established that the Federal Wiretap Act preempted state law. Courts are reluctant to presume that Congress intended to preempt state law " 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.' " *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747–48, 105 S.Ct. 2380, 2393, 85

L.Ed.2d 728, 745 (1985) (citations and internal quotes omitted); *Building and Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.,* 507 U.S. 218, 224, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565, 574 (1993). Courts should first attempt to reconcile the application of both the federal and state laws before disqualifying the other. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 126, 94 S.Ct. 383, 389, 38 L.Ed.2d 348, 358 (1973). Nor should courts seek out conflicts between federal and state regulations where none clearly exists. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 130, 98 S.Ct. 2207, 2216, 57 L.Ed.2d 91, 103 (1978). Thus, state law should only be displaced

'Amendments') apply to *all* cordless telephones appears to be an issue of first impression. The Court has not found, and the parties have not presented, any case applying the Amendments to cordless telephone conversations." *Id.* at 112 (emphasis in original). The court noted that the defendants in that case relied on a law review article supporting the contention that the amendments did not apply to all cordless telephones. In the article, the author stated:

> Will courts protect all cordless communications? Unfortunately neither the 1994 Act, nor its legislative history, provide a clear answer.... [T]he 1994 amendment merely removes the cordless telephone exclusion. The language that expressly extends protection to cordless phones is found in the legislative history of the 1994 Act. Nonetheless, even if courts turn to the legislative history of the Federal Wiretap Act, it may not find a clear congressional intent to protect all cordless phones. First, although the legislative history of the 1994 Act states that the protection of the ECPA is extended to cordless phones, it does not state that all cordless phones are protected.
>
> Secondly, the legislative history of the 1994 Act further states that Congress decided to extend ECPA protection after examining a wide array of communications, media, including "the newer generation of cordless phones" (phones not easily intercepted). If one reads this legislative history in conjunc-

tion with the legislative history of the ECPA, which specifically states that Congress did not extend Title III protection to cordless phones because they are so easily intercepted, it appears that there is no protection for conventional cordless telephones. Nevertheless, Congress' willingness to protect cordless phones appears to have come only after those phones were equipped with antiinterception devices.

Basil W. Mangano, *The Communications Assistance for Law Enforcement Act and Protection of Cordless Telephone Communications: The Use of Technology as a Guide to Privacy,* 44 Clev. St. L.Rev. 99, 119–20 (1996); *see also* Frank J. Eichenlaub, *Carnivore: Taking a Bite out of the Fourth Amendment?,* 80 N.C. L.Rev. 315, 339 (2001) (indicating that although the Federal Wiretap Act now includes cordless telephone communications, there is still some doubt as to whether there is a reasonable expectation of privacy in such communications). The district court, however, rejected the defendants' contention stating that, while supported by logic, it was contrary to the statutory language. *Spetalieri,* 36 F.Supp.2d at 113.

While these authorities provide some interesting insight, they are not relevant for purposes of determining qualified immunity as to whether the law was clearly established in this circuit with respect to the defendant's conduct pursuant to Tenn.Code Ann. § 39–13–604.

" 'to the extent that it actually conflicts with federal law.' " *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 476, 116 S.Ct. 1063, 1064, 134 L.Ed.2d 115, 118 (1996).

As stated earlier, Judge Hamilton found that Tenn.Code Ann. § 39–13–604 was preempted by the Federal Wiretap Act. The United States Court of Appeals for the Second Circuit has held that whether proceedings are before a federal or state court,

> interpretation of a state wiretap statute can never be controlling where it might impose requirements less stringent than the controlling standard of Title III. If a state should set forth procedures more exacting than those of the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well.

*United States v. Marion*, 535 F.2d 697, 702 (2d Cir.1976) (footnote omitted); *but cf. Nix v. O'Malley*, 160 F.3d 343, 347 n. 4 (6th Cir.1998) (plaintiff brought action for the unlawful use and disclosure of intercepted communications under a 1995 version of an Ohio statute which only provided action for illegal "disclosures." The parties interpreted the Ohio statute as being in line with the Federal Wiretap Act which encompassed illegal "use" as well. The Sixth Circuit noted, "Believing that Title III may preempt some state laws, the parties ... interpret Ohio's law as comparable to Title III .... Whatever the merit of this approach-and we take no position on it ...."). Assuming, without deciding, that the Federal Wiretap Act preempts Tenn.Code Ann. § 39–13–604, the Court finds that the defendant is still entitled to qualified immunity under the good faith exception provided in the Federal Wiretap Act. As stated above, taking into consideration the dearth of case law regarding the post–1994 Federal Wiretap Act with respect to the interception of cordless telephone communications and Tennessee state law regarding the Tennessee wiretap statutes and the defendant's reliance on statutory authorization and a court order, the Court finds that the case law was sufficiently unclear regarding the unlawfulness of Tenn.Code Ann. § 39–13–604 at the time of the defendant's conduct that a reasonable officer would not have known his actions were unlawful.

## IV.

For the reasons stated above, the defendant's motion (Docket Entry No. 15) for summary judgment is granted. As the Court dismisses with prejudice the plaintiff's federal claims against the defendant, it declines to exercise supplemental jurisdiction over the plaintiff's pending state claims. *See* 28 U.S.C. § 1367(c)(3); *see also Cameron v. Seitz*, 38 F.3d 264, 276 (6th Cir.1994) ("With the dismissal of the [federal] claim, original jurisdiction over the state ... claim is lacking, and the district court has discretion as to whether to continue to exercise supplemental jurisdiction over it."). Thus, the Court shall dismiss without prejudice the plaintiff's state claims of false light and invasion of privacy.[11]

An appropriate order shall be entered.

### *ORDER*

In accordance with the memorandum contemporaneously entered, the defendant's motion (filed July 19, 2002; Docket Entry No. 15) for summary judgment is granted.

---

11. As stated in note 1 *supra,* the plaintiff conceded that summary judgment should be granted as to his claim for malicious prosecution.

Accordingly, the plaintiff's federal claims are dismissed with prejudice. The plaintiff's state claims of false light and invasion of privacy are dismissed without prejudice.

The entry of this order shall constitute the judgment in this action.

It is so ORDERED.